The Court has reviewed the docket and filings in response to and associated with its prior orders, Doc. 6 and Doc. 26. (*See* Docs. 39-44). As licensed counsel has failed to appear, and Plaintiff has failed to sufficiently show cause in accordance with applicable case law why he may proceed *pro se* on behalf of the decedent's estate, this action is hereby dismissed. *See Lattanzio v. COMTA*, 481 F.3d 137 (2d Cir. 2007); *see also Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010). In light of this ruling, Plaintiff's other requests and/or alternative arguments, are denied. Accordingly, the Clerk of Court is respectfully directed to terminate any pending motions (Docs. 39, 40, 42) and close this case.

SO ORDERED.

Philip M. Halpern
United States District Judge

Dated:  White Plains, New York
          May 21, 2026

Hon. Philip M. Halpern
United States District Judge
Southern District of New York
300 Quarropas Street, Room 530
White Plains, New York 10601

**VIA ECF**

May 19, 2026

**Re:  *Estate of Beth Ann Lee v. Bryan Medical Center et al.*, No. 7:26-cv-00559-PMH — Response to Order to Show Cause (ECF No. 26)**

Dear Judge Halpern:

Pursuant to the Court's Order at ECF No. 26, Plaintiff respectfully responds to the Court's directive to show cause "why any claims belonging to the decedent's estate should not be dismissed for the reasons outlined in the Nebraska District Court Case." The grounds for declining dismissal are set forth below.

In short:

(i) under *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and *Berk v. Choy*, 607 U.S. ___ (Jan. 20, 2026), no state-derived or judicially-fashioned gloss can answer the procedural questions of administrator capacity and cure differently than the Federal Rules answer them;

(ii) Federal Rule of Civil Procedure 17(a)(1) expressly authorizes an administrator to sue in his own name, and Rule 17(a)(3) — the textually specified cure for any real-party-in-interest defect — would in any event preclude dismissal without a reasonable cure period;

(iii) Plaintiff independently satisfies the *Guest v. Hansen* exception to *Pridgen* by the same self-certified mechanism *Guest* itself prescribes — Plaintiff's Declaration submitted herewith, attesting under penalty of perjury that the other distributees have agreed to

1

renounce and disclaim any and all claims to the Estate and that the Estate has no creditors; the public probate record of the Surrogate's Court of Orange County, New York additionally confirms — by way of executed notarized waivers of administration — that the other distributees have already relinquished the very administrator/executor status FRCP 17(a)(1)(A)–(B) makes available, and that their economic position is structurally indifferent whether this action proceeds or is dismissed; and, in any event, dismissal would harm any hypothetical undeclared creditor far more than pro se prosecution by extinguishing the Estate's sole recoverable asset in perpetuity and with no recourse;

(iv) under *Berk*, the Nebraska *Kelly*-nullity rationale on which the Nebraska court rested its dismissal — and on which this Court's show cause directive in turn rests — cannot operate in federal court, as Rule 17(a)(3) is the Federal Rule's textually specified answer to any asserted real-party defect and contrary state-derived nullity doctrine is displaced as a non-Rule contrary source;

(v) *Kelly* itself confirms the point: the Nebraska Supreme Court's denial of an estate administrator's attempted Rule 17(a)(3)-style cure — retention of counsel, leave to amend, relation back — is precisely the forfeiture Rule 17(a)(3) exists to prevent, not authority for replicating that forfeiture in federal court;

(vi) the Nebraska dismissal order is internally inconsistent on its own terms — it disposes of the Estate's claims "without prejudice" under Nebraska's savings statute while resting on the *Kelly* rationale that the pro se filing "never existed," and a thing that never existed cannot be dismissed at all, let alone preserved for refiling;

(vii) because the statute of limitations has run, a dismissal here would be functionally with prejudice and would extinguish the Estate's sole asset over a representation concern that the Surrogate's Court's appointment of Plaintiff as sole Administrator has already resolved and which FRCP 17(a)(1) explicitly authorizes with no precondition;

and (viii) Plaintiff has pursued counsel through more than one hundred firms across multiple jurisdictions; the absence of representation reflects Defendants' own enterprise conduct, including a non-clinical interstate patient divestiture that foreclosed Nebraska-based investigation and Nebraska-based legal access — Plaintiff respectfully renews the motion at ECF No. 7 for facilitation of counsel under the Court's inherent authority.

## I.  PROCEDURAL POSTURE AND CURRENT IMPASSE

Plaintiff respectfully incorporates by reference the procedural history set forth in ECF No. 39, filed May 13, 2026.

Notwithstanding the abruptness of counsel's withdrawal — and without any notice or transition assistance from exiting counsel — Plaintiff has met every procedural obligation that has come due in the days since: ECF No. 39 (May 13), to alert the Court to retained counsel's failure to

perfect its appearance by the Court's deadline and to renew Plaintiff's motion for facilitation of counsel; ECF No. 40 (May 14), to complete service exiting counsel had abdicated; the present submission (May 19), in response to the Court's Order at ECF No. 26; and timely letter responses (May 19) to each of the three pre-motion letters served under Your Honor's Individual Practice Rule 4(C). All deadlines applicable to Plaintiff have been met, with the sole exception of service on Dr. Willet, for which a 30-day extension is pending at ECF No. 40.

Plaintiff therefore proceeds pro se to address the Court's threshold representation concern through the controlling displacement framework set forth in Section II, the Federal Rules–compatible mechanisms set forth in Section III, and Plaintiff's renewed motion for facilitation of counsel set forth in Section VIII.

## II.  BERK v. CHOY ESTABLISHES A SWEEPING DISPLACEMENT FRAMEWORK CONTROLLING THIS COURT'S DISPOSITION

On January 20, 2026, a unanimous Supreme Court decided *Berk v. Choy*, 607 U.S. ___ (2026). Although *Berk* arose on the particular facts of a Delaware affidavit-of-merit statute requiring medical-malpractice plaintiffs to file an expert affidavit alongside their complaints, the holding rests on, and reaffirms in unequivocal terms, a displacement framework that reaches contrary requirements whether supplied by state statute, state common law, federal common-law overlay on a federal statute, or federal judicial improvisation through inherent authority — the last of which *Berk* itself explicitly rejected, slip op. at 9. The framework is squarely operative here. The doctrinal architecture on which any dismissal of the Estate's claims would rest — Nebraska's *Kelly* nullity rule; the Eighth Circuit's incorporation of state nullity reasoning in *Jones*; the Second Circuit's § 1654 gloss in *Pridgen* and *Lattanzio*; and any layered judicial overlay that would condition Rule 17(a)(1)'s express authorization of administrator suit — is foreclosed by *Berk* in each of its iterations. Plaintiff addresses *Berk* directly and textually below.

### A.  The Holding, Its Framework, and Its Reach Beyond the Delaware Facts

In *Berk*, the Supreme Court considered whether Delaware Code Title 18, § 6853 — which requires a plaintiff in a medical-malpractice action to file an affidavit of merit signed by a medical professional alongside the complaint — applies in federal court. Slip op. at 1–2. The Court held that it does not. *Id.* The Delaware statute is displaced by the Federal Rules of Civil Procedure, and a federal court may not dismiss a malpractice complaint for failure to attach the affidavit the statute prescribes. *Id.*

The disposition is significant on its facts. But the framework on which the Court built that disposition is sweeping. *Berk* reaffirms — and articulates with unusual clarity — the controlling displacement framework set forth in *Hanna v. Plumer*, 380 U.S. 460 (1965), and most recently elaborated in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). Under that framework, "when a valid Federal Rule of Civil Procedure is on point, it displaces contrary state law even if the state law would qualify as substantive under *Erie*." Slip

op. at 3–4. The inquiry is "straightforward": whether the Federal Rule "answers the disputed question," and if it does, "it governs, unless it 'exceeds statutory authorization or Congress's rulemaking power.'" *Id.* at 4 (quoting *Shady Grove*, 559 U.S. at 398). And under the Rules Enabling Act, 28 U.S.C. § 2072, the validity inquiry is itself "modest": whether the Rule "really regulates procedure." *Id.* at 10 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)).

The displacement authority *Berk* invokes is rooted in the Rules Enabling Act, 28 U.S.C. § 2072, not in *Erie*. The Rules Enabling Act empowers the Supreme Court to promulgate procedural rules subject only to the limitation that they "shall not abridge, enlarge or modify any substantive right." § 2072(b). A Rule that satisfies that test and "really regulates procedure" governs in federal court by force of the rulemaking framework itself. The *Erie* context — state law in diversity — supplies the most common factual setting in which displacement is litigated, but it does not limit the principle's domain. Absent specific legislation passed by Congress, a valid Federal Rule, once it answers the disputed procedural question, cannot be displaced by any non-Rule contrary source, whether state or federal, statutory interpretation layering preconditions on top of a Federal Rule, or judicial discretion and inherent authority.

Three principles of *Berk*'s framework — its foreclosure of any non-Rule source of contrary requirements (Section II.B), its ceiling on additional requirements where a Rule has spoken (Section II.C), and its status as intervening Supreme Court authority postdating the Nebraska dismissal (Section II.D) — govern the threshold question before this Court.

## B. Berk Forecloses Contrary Requirements From Any Source — State Law, Federal Overlay, and Inherent Authority Alike

First, *Berk*'s displacement principle operates regardless of the doctrinal vehicle through which a contrary requirement is sought to be imposed. The Court framed the inquiry around whether "a Federal Rule of Civil Procedure is on point," *id.* at 3–4, and held that where the Rule answers the disputed question, the Rule's answer governs. *Berk* itself demonstrates the reach of that principle by walking through and rejecting five distinct alternative vehicles the defendants proposed for evading displacement. The inclusion of Rule 11 workarounds — Rule 11 being a Federal Rule that operates in all federal actions, not just diversity — forecloses any reading of Berk that confines its framework to state-law substantive preconditions.

The first four vehicles are state-law-adjacent. *Berk* rejected: state-law characterization, *id.* at 6–8; rebranding as a "precondition to proceeding," *id.* at 7–8 ("Describing the [state] requirement as a 'preconditio[n] to proceeding' does not magically dispel the conflict."); redeployment as a "free-floating evidentiary requirement," *id.* at 8–9 ("[T]he Delaware law is no longer a pleading requirement that serves a gatekeeping function; it is a free-floating evidentiary requirement that can serve as the basis for an early dismissal."); and statutory loopholes via Rule 11's affidavit proviso, *id.* at 9–10.

The fifth vehicle is not state law at all. The *Berk* district court had dismissed the plaintiff's case based on the court's "inherent authority" — a federal-court power untethered to any state-law

4

source. Slip op. at 9. The Supreme Court rejected that route directly: "the Federal Rules already prescribe a mechanism for putting a plaintiff to his proof: a motion for summary judgment." *Id.* "That defendants cannot fit the affidavit requirement into the Federal Rules illustrates that it has no place there." *Id.* That fifth rejection is dispositive of the framework's reach: *Berk* forecloses workarounds federal in origin and rooted in the federal judicial power itself, not merely workarounds derived from state law.

From that foothold, the extension to other federal-court workarounds is straightforward. If *Berk* forecloses a federal court's improvisational authority to add a precondition the Federal Rules have not — a workaround with no statutory basis at all — it forecloses *a fortiori* a circuit's settled judicial gloss on a federal statute that purports to add the same kind of precondition. The *Pridgen/Lattanzio* line, which construes 28 U.S.C. § 1654 to layer a licensed-counsel precondition atop Rule 17(a)(1)'s express enumeration of administrators, falls squarely within that *a fortiori* extension. In every case — state statute, state common law, federal common-law overlay on a federal statute, federal common law incorporating state policy reasoning, or federal judicial improvisation through inherent authority — the analytic move is identical: a non-Rule source supplies a different and stricter answer to a question a valid Federal Rule has already answered. *Berk* holds that the Rule's answer controls.

As applied here: Rule 17(a)(1) authorizes administrator suit by enumeration; Rule 17(a)(3) supplies the mandatory cure period for any asserted real-party defect; Rule 12 prescribes the exclusive grounds for dismissal based on the merits. The Federal Rules occupy the field. Neither inherent authority nor the *Pridgen/Lattanzio* § 1654 gloss can be deployed to add a precondition the Rules do not impose, because — under *Berk* — there is no procedural gap into which such a precondition can fit.

Indeed, § 1654 itself reinforces this conclusion textually. The statute provides that parties may plead "personally or by counsel as, *by the rules of such courts, respectively, are permitted* to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). § 1654 thus defers expressly to the federal courts' rules for the manner of pleading — including personally — and Rule 17(a)(1) is the rule that operationalizes that delegation by enumerating administrators among those who may sue in their own names. Reading § 1654 to add a representation precondition the Rule does not impose is not construction of the statute; it deletes § 1654's own deference clause and substitutes a judicial preference for what the rules expressly permit.

## C. *Berk's* Ceiling Principle: Silence on Additional Requirements Excludes Them

Second, where a Rule answers the disputed procedural question, the Rule's silence on additional requirements is not a doctrinal gap to be filled. It is a ceiling that excludes additional requirements. The Court was emphatic: Rule 8(a)(2) was held to "establish[] 'implicitly, but with unmistakable clarity'" that evidence of a claim is not required at the pleading stage, *id.* at 5 (quoting *Hanna*, 380 U.S. at 470), because Rule 8 "specif[ies] what information about the merits is required in the 'pleading'" and "exclude[s] the possibility of requiring even more information

5

on the same topic." *Id.* at 6. The Rule, the Court explained, "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." *Id.* The silence was the holding. Critically, the ceiling is source-agnostic in its effect: the Rule's silence cannot be filled by inference, whether drawn from state law, federal common law, or the construction of an adjacent federal statute.

That structural principle applies with full force here. Rule 17(a)(1) expressly enumerates "an executor" and "an administrator" among those who may sue in their own names as the real party in interest. Fed. R. Civ. P. 17(a)(1)(A), (B). The Rule contains no licensed-counsel requirement, no sole-beneficiary qualifier, no no-creditor qualifier, no qualifier of any kind. Under *Berk*, that enumeration is the ceiling: additional preconditions to administrator suit cannot be imposed through state law, state-derived federal common law, or circuit-fashioned overlay on 28 U.S.C. § 1654. The full force of this point is developed in Section III, *infra*, where the Rule's text and *Berk*'s framework foreclose dismissal of the Estate's claims on threshold representation grounds.

### D. Berk Is Intervening Controlling Authority Postdating the Nebraska Dismissal

Finally, *Berk* was decided on January 20, 2026 — after the District of Nebraska's July 21, 2025 dismissal of the Estate's claims on *Kelly*-nullity grounds, and before this Court's threshold inquiry. The doctrinal background against which this Court evaluates the threshold representation concern is therefore materially different from the doctrinal background the Nebraska court applied. The Nebraska court did not have, and could not have applied, *Berk*'s reaffirmed displacement framework. This Court does have it.

For the reasons developed in Section III (Rule 17 authorization and its application here) and Section IV (the Nebraska nullity doctrine and its Eighth Circuit incorporation), *Berk* forecloses dismissal of the Estate's claims on the rationale on which the show cause directive rests.

### III. THE FEDERAL RULES AUTHORIZE PRO SE ADMINISTRATOR REPRESENTATION HERE

The threshold question raised by the Court's show cause order is whether the Estate's claims must be dismissed because they are prosecuted by a pro se administrator. Under the plain text of the Federal Rules of Civil Procedure, controlling Supreme Court authority on rule displacement, and the public probate record of the Surrogate's Court, the answer is no.

### A. Rule 17(a)(1) Expressly Authorizes Administrators to Sue in Their Own Names

The starting point — and, on its face, the ending point — of the Court's threshold analysis is Federal Rule of Civil Procedure 17(a)(1):

> "An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: (A) an executor; (B) an administrator . . . ."

The text is mandatory ("must be prosecuted") and the authorization is enumerated. Administrators and executors are expressly named — by category, in the first two enumerated subparts — as parties who may sue in their own names. The Rule contains no licensed-counsel requirement, no sole-beneficiary qualifier, no no-creditor qualifier, and no qualifier of any kind that would condition the administrator's authorization on the absence of other distributees. The drafters of the Federal Rules understood that estates routinely have multiple beneficiaries and creditors— that is, in fact, the ordinary case — and they chose not to limit the authorization. The text is unconditional and the enumeration leaves no room for discretion: an administrator may sue.

Plaintiff is the duly appointed sole and uncontested Administrator of the Estate of Beth Ann Lee, with Letters of Administration issued by the Surrogate's Court of Orange County, New York. He is — by the express enumeration of Rule 17(a)(1)(B) — a party authorized to prosecute this action in his own name. There is, on the face of the Rule, no real-party-in-interest defect.

## B.  Rule 17(a)(3) Is the Textually Specified Cure for Any 17(a)(1) Defect — And No 17(a)(1) Violation Exists Here

Rule 17(a)(3) — by the architecture of Rule 17 itself — is the textually specified cure mechanism the Rule supplies for any 17(a)(1) violation. It provides, in unequivocal terms:

> "The court *may not dismiss* an action for failure to prosecute in the name of the
> real party in interest until, after an objection, a reasonable time has been allowed
> for the real party in interest to ratify, join, or be substituted into the action."

Fed. R. Civ. P. 17(a)(3) (emphasis added). Upon cure, "the action proceeds as if it had been originally commenced by the real party in interest." *Id.* The 1966 Advisory Committee Notes confirm the anti-forfeiture purpose: the provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made," and was "added simply in the interests of justice." Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment.

Critically, however, Plaintiff respectfully submits that no Rule 17(a)(1) violation exists in the first instance. The Rule expressly enumerates administrators as parties who may sue in their own names, and Plaintiff is exactly that party. Rule 17(a)(3) is identified here not because Plaintiff concedes a defect requiring cure, but because the Rule's structure belt-and-suspenders forecloses dismissal even on the contrary assumption: if the Court were to identify any real-party concern, the Federal Rules themselves prescribe a mandatory cure period — not dismissal — as the remedy. The Rule answers both the underlying capacity question and the procedural question of what occurs in the event of any asserted defect, and it answers both in Plaintiff's favor.

**C. Shady Grove and Berk Confirm That No Judicial Gloss Can Restrict the Rule's Authorization — And No State Law Gloss Can Retroactively Unfile a Federal Action Commenced Under Rule 3**

To the extent the Court's show cause directive reflects a concern derived from the Nebraska District Court's application of Nebraska's "nullity" doctrine (*Kelly v. Saint Francis Med. Ctr.*, 295 Neb. 650, 889 N.W.2d 613 (2017)), or from any other judicially-fashioned limitation on Rule 17(a)(1)'s plain authorization, intervening Supreme Court authority forecloses that gloss.

Rule 17(a)(1) answers the question of who may prosecute estate claims. It identifies the administrator by name. Rule 17(a)(3) answers the question of what must occur before any dismissal for an asserted real-party-in-interest defect: a mandatory cure period. The Rules Enabling Act, 28 U.S.C. § 2072, authorizes those Rules. Where the Federal Rules answer, contrary state-law or state-derived doctrine — including Nebraska's nullity rule, which retroactively erases a properly filed and docketed action — cannot answer differently.

Moreover, and most crucially, federal supremacy does not allow for the retroactive erasure of a duly commenced federal action under Rule 3 from the docket on the basis of state court judicial gloss. As the Supreme Court reaffirmed just months ago, Rule 3's "uncompromising, declarative phrase 'is commenced'" makes the filing of a complaint "both necessary and sufficient to begin any civil case" in federal court. Berk v. Choy, 607 U.S. ___, slip op. at 5 (2026) (Jackson, J., concurring in judgment). That federal pronouncement "leaves 'no room'" for state-law overlays that would treat a duly filed federal complaint as if it had never been filed at all. Ibid. (quoting Burlington N. R. Co. v. Woods, 480 U.S. 1, 5 (1987)). Nor does the substantive cast of any such state rule rescue it: "the substantive nature of [a state] law, or its substantive purpose, makes no difference." Berk, slip op. at 11 (majority op.) (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 409 (2010)). Once Rule 3 has done its work, the action is — as a matter of federal law — commenced; and no state-court doctrine, however venerable, may reach backward through the federal docket to undo what a valid Federal Rule has already accomplished.

That principle disposes of any reliance on *Jones ex rel. Jones v. Correctional Medical Services, Inc.*, 401 F.3d 950 (8th Cir. 2005). *Jones* imported Arkansas's *Davenport* nullity reasoning as federal policy without conducting the *Berk*/*Shady Grove* displacement inquiry that the Supreme Court has now squarely commanded. A pre-*Berk* decision that incorporated a state procedural device without conducting that inquiry cannot foreclose the inquiry now. *Berk* and *Shady Grove* control.

To the extent the Court's analysis instead implicates the Second Circuit's gloss in *Pridgen v. Andresen*, 113 F.3d 391 (2d Cir. 1997), and the exception fashioned in *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), the analytical destination is the same even though the doctrinal origin differs. *Jones* incorporated state nullity reasoning; *Pridgen* and *Guest* layered federal common-law concerns atop Rule 17(a)(1) and 28 U.S.C. § 1654. But the *Berk* inquiry is the same in either

case: does the Federal Rule answer? Rule 17(a)(1) does answer, and § 1654's "personally" language is silent on remedies. The cure mechanism for any asserted real-party defect is supplied by Rule 17(a)(3), and dismissal without that cure period is foreclosed by the Rule's mandatory language.

In any event, as set forth in Sections III.D and III.E below, Plaintiff has filed a Declaration under penalty of perjury supplying the same self-certified showing *Guest* itself prescribes, and the public probate record and structural posture of the Estate's other distributees independently confirm that *Pridgen*'s protective concern has no purchase on this record — so the issue is fully resolved on either doctrinal track.

**D.  The Surrogate's Court Probate Record Establishes Bona Fide Waivers of Administration**

To the extent the Court applies *Guest v. Hansen* as the governing framework, Plaintiff satisfies its predicates on a documentary record that already exists in a state court of competent jurisdiction.

To be appointed sole Administrator of the Estate of Beth Ann Lee, Plaintiff was required by the Surrogate's Court of Orange County, New York, to procure and file signed, notarized waivers from each of the other distributees — Bruce Lee, the decedent's surviving spouse, and Jessica Leber, the decedent's daughter — by which they waived their respective rights to administer the Estate. Those waivers are notarized instruments in the public probate record. They are not "forthcoming," nor are they dependent on Plaintiff's own representations. They were already required, executed, and accepted before Letters of Administration issued to Plaintiff as sole Administrator.

Under New York law, a distributee's waiver of the right to administer the Estate necessarily encompasses a waiver of the right to control the litigation that constitutes the Estate's administration. The Administrator is the party charged with prosecuting causes of action belonging to the Estate. Having waived administration, Bruce Lee and Jessica Leber have no right to interfere with — or to require licensed-counsel representation on top of — Plaintiff's pursuit of those claims.

Plaintiff does not contend that these distributees have no underlying beneficial interest as a matter of substantive succession law. Plaintiff submits the narrower point that *Guest*'s reasoning actually requires: that the other distributees have no interest that can be foreclosed or impaired by Plaintiff's pro se prosecution of the Estate's claims. Two facts make that point structurally inescapable.

First, the distributees recover nothing — zero — if this action is dismissed. They recover only to the extent the Estate's claims succeed. Their interests can only be advanced by Plaintiff's prosecution; they cannot be harmed by it.

Second, the Surrogate's Court of Orange County retains final supervisory authority over the distribution of any recovery. Whatever recovery is obtained in this action will be distributed under the Surrogate's Court's oversight, in accordance with applicable succession law and any executed assignments. Plaintiff's pro se litigation of the Estate's claims neither displaces nor prejudices that supervisory authority. The structural concern that *Guest* fashioned its exception to address — that a pro se administrator might inadequately represent the interests of other beneficiaries — is therefore absent on this record as a matter of structural fact, not merely as a matter of executed paper.

Plaintiff's Declaration, submitted herewith as Exhibit A under penalty of perjury pursuant to 28 U.S.C. § 1746, attests to the foregoing factual matters and further attests that, after conferring with each, Bruce Lee and Jessica Leber have agreed to renounce and disclaim any and all claims to the Estate in perpetuity, and that the Estate has no known creditors.

### E.  Guest v. Hansen Independently Permits Pro Se Administrator Representation on This Record

In *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), the Second Circuit expressly resolved the question left open in *Pridgen v. Andresen*, 113 F.3d 391 (2d Cir. 1997), and held that "an administrator can proceed pro se where an estate has neither creditors nor beneficiaries other than the administrator." *Guest*, 603 F.3d at 17. The Court reasoned that "[i]t is only a legal fiction that assigns the sole beneficiary's claims to a paper entity — the estate — rather than the beneficiary himself," and that "[b]ecause the administrator is the only party affected by the disposition of the suit, he is, in fact, appearing solely on his own behalf." *Id.* at 20.

Critically, the Second Circuit accepted the necessary factual predicates — that the other beneficiary had disclaimed and that the estate had no creditors — not via executed instruments, formal probate filings, or notarized waivers, but via post-argument representations. As the Court of Appeals recounted: "Plaintiff filed a letter brief providing evidence that Mrs. Guest was disclaiming all interest in Kristine's estate, leaving Mr. Guest as the sole beneficiary. Subsequently, upon the Court's post-argument inquiry, he filed an additional brief stating that the estate had no creditors." *Id.* at 19.

The showing here is materially stronger than the showing the Second Circuit accepted in *Guest*. The Surrogate's Court has already received and accepted notarized waivers of administration; Plaintiff is the only party effectively affected by the disposition of these claims because the other distributees can only benefit, never be harmed, by Plaintiff's pro se prosecution; the Surrogate's Court retains supervisory authority over any distribution; and Plaintiff has further submitted a Declaration under penalty of perjury attesting that Bruce Lee and Jessica Leber have agreed to renounce and disclaim any and all claims to the Estate in perpetuity and that the Estate has no known creditors.

Finally, and as a structural matter strengthening the foregoing, the *Pridgen*-protective concern applied *a fortiori* militates against dismissal, not for it. Two years, eleven months, and two days

have elapsed since Decedent's death on June 17, 2023, and eight months and twenty-two days since the Surrogate's Court of Orange County, New York issued Letters of Administration to Plaintiff on August 27, 2025. The Estate is indigent. The causes of action prosecuted herein are its sole recoverable asset. Dismissal would extinguish those causes of action permanently and would forever foreclose any hypothetical undeclared creditor from any recovery whatsoever. If *Pridgen* would bar pro se prosecution to avert the lesser and contingent risk of imperfect lay advocacy, it must with greater force bar the certain and irrevocable extinction of every hypothetical undeclared creditor's recovery. *Hansen* requires only a simple self-certified affirmation that the Estate has no creditors, which Plaintiff makes herein; the foregoing is offered solely to confirm that even the hypothetical-undeclared-creditor scenario resolves in favor of permitting the action to proceed.

## F.  Lattanzio v. COMTA Does Not Compel Dismissal — Its Entity-Representation Remedy Is Cure With Counsel, Not Forfeiture

The Court's Order at ECF No. 6 quotes *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007), for the general proposition that "a person who has not been admitted to the practice of law may not represent anybody other than himself." Read carefully, *Lattanzio* does not compel dismissal here. To the contrary, it supplies the precise remedy Plaintiff invokes — a cure period during which counsel may be obtained, with no forfeiture of the underlying action.

### 1.  Lattanzio's "with prejudice" disposition was a merits ruling on the lay litigant's personal claims, not on the entity-representation question.

The "with prejudice" disposition in *Lattanzio* applied to Jim Lattanzio's pro se appeal of his own personal claims, which the district court had dismissed as meritless and which the Second Circuit affirmed on the same ground. 481 F.3d at 139–40 ("Lattanzio's claims are meritless, and were properly dismissed by the District Court."). That disposition has no application here. The Estate's claims have not been adjudicated on the merits in any forum, and the Court's show cause directive raises only a threshold representation concern.

### 2.  Lattanzio's entity-representation disposition — the holding directly analogous to the question before this Court — was without prejudice, with a 45-day cure period.

The portion of *Lattanzio* that addresses entity representation, and that is therefore the analytical analog to the question of estate representation here, reached the opposite disposition. With respect to Galen Institute LLC, the Second Circuit denied reinstatement "WITHOUT PREJUDICE to renewal after Galen obtains a licensed attorney to represent it," and directed that "[i]f Galen obtains counsel, counsel must file, within 45 days of the entry of this opinion, an amended notice of appeal and a notice of appearance, along with the renewed motion." 481 F.3d at 140.

*Lattanzio* therefore does not stand for the proposition that an entity-representation defect compels dismissal with prejudice or extinguishment of the action. It stands for the opposite proposition: where an unrepresented juridical entity appears in federal court, the Second

11

Circuit's own remedy is a cure period during which counsel may be obtained, with the action preserved in the interim. The 45-day cure period the Second Circuit prescribed for Galen is materially identical to the "reasonable time" cure period Rule 17(a)(3) mandates for any real-party-in-interest defect — and is materially identical to the relief Plaintiff requests in the alternative herein.

### 3.  Lattanzio construes 28 U.S.C. § 1654, which is silent on remedies; Rule 17(a)(3) supplies the mandatory remedy.

*Lattanzio*'s analysis is grounded entirely in 28 U.S.C. § 1654 and the Second Circuit's prior § 1654 case law. See 481 F.3d at 139 (interpreting § 1654 to permit only "two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself". Section 1654 addresses who may "plead and conduct" their own case. It is textually silent on remedies — on what must happen procedurally when a representation question is raised.

Rule 17(a)(3) is not silent. It provides that "[t]he court *may not dismiss* an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3) (emphasis added). Where § 1654 and Rule 17(a)(3) operate on the same procedural terrain, the Federal Rule's mandatory cure-period language controls — both as a matter of textual hierarchy and under the *Shady Grove*/*Berk* displacement framework set forth in Section II. *Lattanzio*'s § 1654 framework supplies the threshold rule of representation; Rule 17(a)(3) supplies the mandatory remedy when a representation defect is identified. The two operate harmoniously and both point to the same disposition.

### 4.  Lattanzio is factually distinct, and its underlying rationale has no purchase on this record.

*Lattanzio* addresses a sole-member limited liability company — a commercial entity whose member chose to "accept the advantages of incorporation and must now bear the burdens of that incorporation." 481 F.3d at 140 (quoting *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983)). The rationale is a quid pro quo: a closely-held entity's owner elects the corporate form for its commercial advantages — limited liability, tax treatment, separate juridical existence — and must accept the corollary obligation of licensed representation.

An estate is not a commercial entity, an administrator does not elect the estate form, nor is an administrator appointed by the Surrogate's Court for commercial advantage. The Estate of Beth Ann Lee exists by operation of probate law as a fiduciary administration created upon Decedent's death and supervised by the Surrogate's Court of Orange County, New York. Plaintiff did not "accept the advantages" of estate form; the Estate was created by Defendants' tortious conduct and the death that conduct caused. No commercial quid pro quo attaches to that posture, and *Lattanzio*'s principal rationale does not reach it.

The Second Circuit's subsequent jurisprudence confirms the distinction. Three years after *Lattanzio*, the Second Circuit decided *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), which expressly carved out a sole-beneficiary, no-creditor exception to the general bar on pro se estate representation — without overruling, distinguishing, or even citing *Lattanzio*. The doctrinal architecture is therefore parallel rather than nested: *Lattanzio*'s commercial-entity framework and *Guest*'s estate-administrator framework operate on distinct tracks, and pro se estate prosecution is governed by *Guest*'s exception rather than by *Lattanzio*'s general entity rule. Plaintiff satisfies the *Guest* exception on the record set forth in Sections III.D and III.E.

### 5. Lattanzio is a pre-Shady Grove, pre-Berk decision; to the extent any aspect of its reasoning would foreclose Rule 17(a)(3)'s  cure mandate, that aspect is displaced.

*Lattanzio* was decided in 2007. *Shady Grove* was decided in 2010; *Berk* was decided in 2026. To the extent any aspect of *Lattanzio*'s reasoning could be read to foreclose Rule 17(a)(3)'s mandatory cure period, that aspect would be displaced by the *Shady Grove*/*Berk* analysis set forth in Section II. Where the Federal Rules answer the procedural question of what must occur upon an asserted representation defect, judicial gloss on § 1654 cannot answer differently.

In any event, no displacement question need be reached, because *Lattanzio* is itself consistent with Rule 17(a)(3). The 45-day cure period the Second Circuit prescribed in *Lattanzio* for Galen's entity-representation defect is the cure period Rule 17(a)(3) mandates. The two authorities point to the same disposition: cure, not forfeiture.

### 6. Berk's Rejection of Free-Floating Gatekeeping Devices Independently Forecloses Application of Lattanzio's § 1654 Gloss to Override Rule 17(a)(1)'s  Express Authorization of Administrator Suit.

The foregoing distinctions are sufficient to remove *Lattanzio* from the path of dismissal. *Berk* makes the conclusion overdetermined. Rule 17(a)(1) does not merely supply context for *Lattanzio*; it answers the threshold capacity question on which *Lattanzio*'s § 1654 gloss would otherwise operate, and *Berk* forecloses the use of that gloss to override the Rule.

The structural parallel to *Berk* is exact. In *Berk*, the Federal Rules answered the disputed question — what information must accompany a plaintiff's complaint — and the state-fashioned affidavit requirement supplied a different and stricter answer. The Supreme Court held that the Rule's answer governs and that the contrary gloss cannot be enforced. The Court rejected each of the defendants' efforts to dress the gloss in alternative procedural clothing: "Describing the [state] requirement as a 'preconditio[n] to proceeding' does not magically dispel the conflict." Slip op. at 8. After the defendants' rewriting, "the Delaware law [was] no longer a pleading requirement that serves a gatekeeping function; it [was] a free-floating evidentiary requirement that can serve as the basis for an early dismissal" — and that, the Court held, "has no place" in federal court. *Id.* at 8–9. The Court further rejected the use of the District Court's inherent authority as a workaround, because "the Federal Rules already prescribe a mechanism for putting a plaintiff to his proof." *Id.* at 9.

The same structural move that *Berk* foreclosed is what dismissal under *Lattanzio* would accomplish here. Rule 17(a)(1) answers the disputed capacity question with plain text: "An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: (A) an executor; (B) an administrator . . . ." Fed. R. Civ. P. 17(a)(1)(A), (B). The Rule expressly enumerates administrators. It contains no licensed-counsel qualifier; no sole-beneficiary qualifier; no no-creditor qualifier; no qualifier of any kind. The drafters of the Federal Rules understood that estates routinely have multiple beneficiaries and creditors — that is, in fact, the ordinary case — and they declined to qualify the authorization. Under *Berk*, the Federal Rule's failure to specify additional requirements operates "implicitly, but with unmistakable clarity," to exclude them. *Id.* at 5 (quoting *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)). Just as Rule 8 "sets a ceiling on the information that plaintiffs can be required to provide" at the pleading stage, *id.* at 6, Rule 17(a)(1) sets a ceiling on what may be required of administrators bringing estate claims. The enumeration is the ceiling.

The *Pridgen*/*Lattanzio* line answers the same threshold capacity question differently. It construes 28 U.S.C. § 1654 to layer a licensed-counsel precondition atop the administrator's authorization to sue (subject only to the *Guest* sole-beneficiary carve-out). Under *Berk*'s framework, that doctrinal overlay is precisely the "free-floating" gatekeeping device the Supreme Court rejected: a precondition layered atop a Federal Rule that has already answered the question with finality. Slip op. at 8–9. "Describing the [§ 1654] requirement as a 'preconditio[n] to proceeding' does not magically dispel the conflict." *Id.* at 8. And to the extent dismissal under the gloss would proceed via the Court's inherent authority — as it did in *Berk* itself — *Berk* forecloses that route too: "the Federal Rules already prescribe a mechanism," *id.* at 9, and inherent authority cannot be deployed to bypass it. Rule 17(a)(1) authorizes the administrator's suit; Rule 17(a)(3) supplies the cure period for any asserted defect; Rule 12 prescribes the exclusive grounds for dismissal. There is no procedural gap into which *Pridgen*/*Lattanzio*'s § 1654 gloss can fit, and "[t]hat [defendants] cannot fit the [precondition] into the Federal Rules illustrates that it has no place there." *Id.* at 9.

The pedigree of the gloss reinforces the point. *Lattanzio*'s reasoning rests on concerns about the unauthorized practice of law — a quintessentially state regulatory subject — and on the policy concerns *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993), expressed regarding "artificial entities." Those concerns themselves trace to state UPL doctrine. The *Pridgen*/*Lattanzio* gloss is, at bottom, the importation of state-derived UPL policy into federal procedure to override a validly promulgated Federal Rule. That is precisely the move *Berk* forecloses, whether the importation is direct (as in *Jones*'s incorporation of Arkansas's *Davenport* nullity reasoning, see Section IV.C) or indirect (as in *Lattanzio*'s § 1654 framework). In either case, the analytical structure is the same: a state-derived policy concern is deployed to add a precondition the Federal Rule did not impose. *Berk* holds that this cannot be done. Slip op. at 7–9.

Where, as here, Rule 17(a)(1) expressly authorizes administrator suit by name, *Lattanzio*'s § 1654 gloss cannot operate in federal court to require otherwise. To the extent it would so operate, it is displaced under the *Shady Grove/Berk* framework set forth in Section II. Plaintiff's authorization to prosecute the Estate's claims comes directly from Rule 17(a)(1) and is not contingent on any judicial overlay.

## IV.  BERK INDEPENDENTLY BARS DISMISSAL UNDER NEBRASKA'S NULLITY RATIONALE

Even setting aside Rule 17(a)(1)'s express authorization of administrator suit, intervening Supreme Court authority independently forecloses the specific state-law rationale on which the Nebraska dismissal rested.

### A.  Rule 17(a) Answers the Question of Estate Representation and Cure

The Federal Rules answer the procedural questions of (i) who may prosecute claims on behalf of an estate, and (ii) what must occur before any dismissal premised on a defect in that capacity.

Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest," and expressly enumerates "an executor [and] an administrator" among the parties who "may sue in their own names without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a)(1)(A), (B). The Rule contains no requirement of licensed counsel. The Federal Rules thus identify the administrator himself, by name, as a proper party to prosecute estate claims.

Rule 17(a)(3) supplies the mandatory procedure governing any objection to that capacity. The Rule states, in unequivocal terms, that "[t]he court *may not dismiss* an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3) (emphasis added). Upon cure, "the action proceeds as if it had been originally commenced by the real party in interest." *Id.*

The 1966 Advisory Committee Notes confirm the anti-forfeiture purpose of the cure provision: it "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made," and was "added simply in the interests of justice." Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment.

The same analysis disables any judicial gloss on 28 U.S.C. § 1654 — including the *Pridgen/Lattanzio* line in this Circuit — to the extent it would override Rule 17(a)(1)'s express authorization of administrator suit. See Section III.F.6, *supra*.

### B.  The Nebraska Nullity Doctrine Conflicts With Rules 3 and 17

Nebraska's nullity doctrine, as articulated in *Kelly*, treats a pro se administrator's complaint as "of no effect," as if it "never existed," and as one that "cannot be corrected," so that no relation

back is possible. 889 N.W.2d at 619, 624. That doctrine answers — and answers differently — the same procedural questions that Rules 3 and 17(a)(3) answer.

Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. As Justice Jackson explained in *Berk*, Rule 3's phrase "is commenced" is "uncompromising, declarative," and "plainly indicat[es] that Congress meant for the 'filing of a complaint' to be both necessary and sufficient to begin any civil case . . . in federal court." *Berk* slip op. at 4–5 (Jackson, J., concurring in judgment). The nullity doctrine answers the same question and gives the opposite answer: that filing a complaint pro se on behalf of an estate is *not* sufficient to commence an action, and indeed retroactively erases the commencement that did occur.

Rule 17(a)(3) likewise answers the question of what must occur before dismissal for a real-party-in-interest defect: a reasonable cure period during which ratification, joinder, or substitution may occur. The nullity doctrine answers the same question and again gives the opposite answer: that no cure is available because there is nothing to cure.

Under *Berk*'s straightforward displacement framework, a state rule cannot operate in federal court to give one answer to a procedural question that the Federal Rules answer differently. "Describing the [state] requirement as a 'preconditio[n] to proceeding' does not magically dispel the conflict." Slip op. at 8. Nor can a state mechanism be deployed as a "free-floating enforcement device" outside the Federal Rules where the Federal Rules already prescribe the procedure. *Id.* at 8–9.

Indeed, the nullity doctrine is more intrusive than the precondition rejected in *Berk*, not less. The Delaware affidavit requirement in *Berk* would have blocked filing *ex ante*; the nullity doctrine retroactively erases a filing that has already occurred and been docketed. If *Berk* bars the lesser intrusion, it bars the greater.

## C. Eighth Circuit Authority Predating Berk Cannot Survive Berk's Displacement Analysis

To the extent the Nebraska dismissal can be read to rely not on *Kelly* directly but on the Eighth Circuit's incorporation of state nullity reasoning in *Jones ex rel. Jones v. Correctional Medical Services, Inc.*, 401 F.3d 950 (8th Cir. 2005), that reliance fares no better. *Jones* adopted Arkansas's *Davenport* nullity reasoning as federal policy and held that "the defect cannot be amended." *Id.* at 952–53. The *Davenport* doctrine *Jones* imported holds that "the original complaint, as a nullity never existed, and thus, an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected." *Davenport v. Lee*, 348 Ark. 148, 160, 72 S.W.3d 85, 93 (2002). *Jones* imported that doctrine without conducting the Federal Rules displacement inquiry the *Hanna* framework had required since 1965. By the time the Nebraska court applied *Jones* and *Kelly* to dismiss the Estate's claims in July 2025, *Shady Grove* had articulated that framework with renewed force for fifteen years; and *Berk* — unanimous, decided January 20, 2026 — reaffirmed it again the day before this action was filed in this Court. A circuit decision that imported a state procedural device without conducting that

inquiry cannot foreclose it now that the Supreme Court has unanimously reaffirmed the framework that displaces it.

Independently, *Jones* identifies the very sole-beneficiary carve-out at issue here, and on its own terms does not reach Plaintiff's circumstances. The Eighth Circuit, in the paragraph applying the nullity rule, distinguished the prohibition from the sole-beneficiary situation: "In this case, Adrian Jones is *not* the only beneficiary/creditor of Dennis Jones's estate. Thus, as a non-attorney, Adrian Jones may not engage in the practice of law on behalf of others." 401 F.3d at 952. The same paragraph cited *Pridgen v. Andresen*, 113 F.3d 391 (2d Cir. 1997), and *Shepherd v. Wellman*, 313 F.3d 963 (6th Cir. 2002), with approval — the line of authority *Guest v. Hansen* ultimately completed. By negative inference and direct textual contemplation, *Jones* identifies the carve-out Plaintiff now occupies on this Court's record by way of the Declaration submitted herewith. What *Jones* nonetheless declined to do — and what the displacement framework *Shady Grove* articulated and *Berk* has now unanimously reaffirmed requires, and what Rule 17(a)(3) independently mandates — is offer a cure period during which the carve-out's factual predicates could be developed. *Jones*'s cure-less procedure is precisely the forfeiture Rule 17(a)(3) was added to the Federal Rules "in the interests of justice" to prevent.

*Kelly*, the authority on which the operative estate-claims dismissal at ECF 14 rested, fares worse on this analysis. *Kelly* never acknowledged the sole-beneficiary carve-out *Jones* itself recognized; never inquired into the Estate's beneficiary structure; and explicitly chose the harshest rule from a split of authority *Kelly* itself identified, 889 N.W.2d at 622, as a matter of Nebraska policy. *Kelly*'s discretionary selection between competing nullity and amendable-defect rules is, at bottom, a state-law policy choice — and under *Shady Grove* and *Berk*, that choice cannot operate in federal court to answer a procedural question the Federal Rules answer differently. In federal court, *Kelly* does not even comport with *Jones*, the very authority on which it relied for the harsher rule; *Kelly* survives, if at all, only within Nebraska's state UPL framework, not as a basis for federal-court dismissal here.

Other federal courts have rejected nullity-based dismissals in favor of cure even before *Berk*. See *Iriele v. Griffin*, 65 F.4th 1280, 1284–85 (11th Cir. 2023) (reversing nullity dismissal of pro se estate action and holding that the filing is not a legal nullity; district court must provide notice and a reasonable opportunity to retain counsel before dismissal); *Estate of Tornell v. Trinity Health Corp.*, No. 24–0720 (Iowa Feb. 6, 2026) (vacating dismissal and remanding with instructions to grant at least thirty days to retain trial counsel). These authorities reflect the same principle *Berk* now compels: where the Federal Rules supply a cure mechanism, state-derived nullity cannot foreclose it.

17

**D. Kelly and Jones Themselves Recognize a Sole-Beneficiary Carve-Out That Was Never Afforded to Plaintiff**

Even setting *Berk* aside, neither *Kelly* nor *Jones* compels dismissal on the facts of this case. Both opinions — by the structure of their own reasoning — exempt the sole-beneficiary administrator who stands in Plaintiff's posture.

*Jones*'s holding is expressly limited. The Eighth Circuit held that section 1654 prohibits pro se administration "when there are *other* beneficiaries or creditors of the estate." *Jones*, 401 F.3d at 951–52 (emphasis added). The bar attaches only "when an estate has beneficiaries or creditors other than the administratrix or executrix," because only then is "the action [not] the litigant's own." *Id.* at 952 (quoting *Pridgen*, 113 F.3d at 393). By the textual structure of *Jones*'s own rule, where the administrator IS the sole beneficiary and the estate has no creditors, the action IS the administrator's own, § 1654's right of personal litigation attaches, and *Jones* supplies no bar. The Second Circuit made that implication explicit in *Guest v. Hansen*, 603 F.3d at 17; the carve-out is already there on the face of *Jones* itself. *Kelly*'s protective rationale presupposes the same carve-out: the Nebraska Supreme Court grounded its analysis in the principle that "this rule protects the estate, its heirs, and its creditors," *Kelly*, 889 N.W.2d at 619 (quoting *Waite v. Carpenter*, 1 Neb. App. 321, 328, 496 N.W.2d 1, 5 (1992)) — a rationale that has no purchase where the administrator is the sole functionally interested party and there are no other heirs or creditors to protect.

The Nebraska court applied *Kelly* and *Jones* without any consideration of whether Plaintiff fell within the carve-out their own reasoning recognizes. Plaintiff was never afforded the opportunity to demonstrate his structural posture under those authorities' own framework — that he is the sole functionally interested party; that the other distributees have executed notarized waivers of administration in the Surrogate's Court of Orange County, New York, and have agreed to renounce and disclaim any beneficial interest in the Estate; and that the Estate has no creditors. Although neither *Kelly* nor *Jones* prescribes a procedural cure mechanism, the carve-out within their own reasoning would have spared Plaintiff dismissal entirely had the Nebraska court asked the question. That procedural deprivation, independent of *Berk*'s displacement of nullity wholesale and independent of Rule 17(a)(3)'s mandatory cure period, also forecloses giving the Nebraska disposition preclusive effect here.

**V. KELLY ITSELF IS THE CAUTIONARY EXAMPLE OF THE FORFEITURE RULE 17(a)(3) EXISTS TO PREVENT**

The facts of *Kelly* — the very case on which the Nebraska dismissal rests — illustrate precisely why Rule 17(a)(3)'s mandatory cure period exists, and what happens when it is bypassed.

Ann Kelly, as administrator of her late husband's estate, filed a pro se complaint on the last day before the statute of limitations expired. *Kelly*, 889 N.W.2d at 615. She subsequently retained counsel, and counsel — within five months of filing — moved for leave to amend the complaint,

18

expressly seeking to "cure any defects in the original complaint, including any unauthorized practice of law." *Id.* at 616. The Nebraska Supreme Court denied the cure, holding that because the pro se filing was a nullity that "never existed," there was "nothing for an amended complaint to relate back to." *Id.* at 624. The statute of limitations had run, and the estate's claims were thereby extinguished forever.

That is the precise procedural mechanism Rule 17(a)(3) prohibits federal courts from employing. *Kelly* attempted the very cure the Federal Rules guarantee — retention of counsel, leave to amend, relation back — and was denied it on the ground that the original filing had been retroactively erased. The result was permanent forfeiture of meritorious claims through a procedural fiction.

Rule 17(a)(3)'s mandatory "must not be dismissed" language exists to prevent exactly that outcome, and *Berk* now confirms that federal courts cannot import state mechanisms that produce it. To dismiss the Estate's claims here on the strength of *Kelly* would be to apply, in federal court, the very state procedural device that the Federal Rules — and now the Supreme Court — have foreclosed.

## VI.  THE NEBRASKA DISMISSAL ORDER IS INTERNALLY INCONSISTENT AND CANNOT SUPPORT DISMISSAL HERE

Beyond its displacement by *Berk* and its conflict with *Guest v. Hansen*, the Nebraska dismissal order on which the Court's show cause directive rests is internally inconsistent on its own terms. That defect is not theoretical. It is operative right now, and it is the reason this case is before this Court at all.

The Nebraska court dismissed the Estate's claims "without prejudice" while resting that dismissal on the rationale of *Kelly v. Saint Francis Med. Ctr.*, under which a pro se filing on behalf of an estate is "of no effect," "never existed," and "cannot be corrected" so that no relation back is possible. 889 N.W.2d at 619, 624. Those two propositions — a "without prejudice" disposition and a nullity rationale — cannot coexist.

A dismissal "without prejudice" is, by definition, a disposition that preserves the plaintiff's ability to assert the same claims again, whether in the same forum after curing a defect or in a different forum under a savings statute. It presupposes that a legally cognizable action was commenced, was before the court, and could have proceeded but for the curable defect. The *Kelly* rationale denies each of those propositions. If the Estate's pro se filing "never existed," there was no action to dismiss, no defect capable of cure, and no procedural anchor to which a savings statute could attach.

The contradiction is operative, not merely formal. This Court has the case before it precisely because the Nebraska court treated its July 21, 2025 dismissal as legally consequential — consequential enough to terminate the Nebraska proceeding as to the Estate's claims, consequential enough to trigger Nebraska's savings statute, see Neb. Rev. Stat. § 25-201.01, and

19

consequential enough to preserve the Estate's ability to refile within the statutory window, which Plaintiff did on January 21, 2026. If the underlying *Kelly* rationale were taken seriously, none of those consequences could attach: a nullity cannot be dismissed; a thing that never existed cannot trigger a savings statute; and there is no plaintiff before whom procedural rights ever vested.

The Nebraska order thus operates by assuming that the Estate's filing existed sufficiently to support the legal consequences that served the dismissal's docket-clearing function, while simultaneously denying that it existed sufficiently to entitle the Estate to the Rule 17(a)(3) cure period the Federal Rules mandate before any such dismissal. The order cannot have it both ways. Either the Estate's Nebraska filing existed sufficiently to support the consequences the Nebraska court drew from it — in which case Rule 17(a)(3) required a reasonable cure period before dismissal — or it never existed at all, in which case the Nebraska court's own dismissal, the running of the savings-statute clock, and the entire procedural posture before this Court are themselves legal nullities.

If the Nebraska action was real enough to be dismissed, it was real enough to be commenced under Rule 3 — and the Federal Rules then governed what was to happen next. Importing the Nebraska court's contradictory disposition into this Court to dismiss the Estate's claims a second time would not resolve the contradiction. It would perpetuate it, and would produce the permanent forfeiture that Rule 17(a)(3) was added to the Federal Rules "simply in the interests of justice" to prevent.

### VII.  THE SAVINGS-STATUTE POSTURE MAKES ANY DISMISSAL HERE FUNCTIONALLY WITH PREJUDICE; THE ESTATE'S CAUSES OF ACTION ARE ITS ONLY ASSET

Equitable considerations strongly counsel against dismissal. The Estate's claims here are not duplicative of any other pending action. They are the savings-statute refiling of claims that were previously dismissed without prejudice in the District of Nebraska, and they exist in this Court because they exist nowhere else.

The Nebraska dismissal of the Estate's claims was entered on July 21, 2025, "without prejudice." That label is now a label only. The statute of limitations on the Estate's underlying claims has expired. This action, filed January 21, 2026, was filed pursuant to Nebraska's savings statute, Neb. Rev. Stat. § 25-201.01, which permits a new action within six months of a non-merits dismissal. There is no further savings statute to invoke. There is no further forum in which the Estate's claims may be heard.

If this Court were to dismiss the Estate's claims now — even "without prejudice" — the dismissal would be functionally with prejudice in concrete operational fact. The label would not save the Estate; nothing would. That is the forfeiture Rule 17(a)(3) was added to the Federal Rules of Civil Procedure "in the interests of justice" to prevent.

Beyond the procedural posture, the substantive equities are unusually pronounced because the causes of action pleaded here are the sole asset of the Estate. The Estate holds no real property and no investment portfolio; its only economically meaningful interest is in the prosecution of the wrongs that caused its formation. As court-appointed Administrator, Plaintiff owes fiduciary duties to the Estate, including the duty not to abandon, encumber, or unnecessarily diminish its assets. A federal-court dismissal that operates as functional extinguishment of the Estate's only asset would compel the Administrator's failure of fiduciary duty by judicial operation rather than by his own conduct or election. The Surrogate's Court of Orange County appointed Plaintiff specifically to protect this asset.

The asymmetry of equities is total. Defendants lose nothing from vacatur of the threshold concern: they retain every substantive defense, every Rule 12 motion, every summary-judgment vehicle, and every defense on the merits. The Estate, by contrast, loses everything if dismissal is entered: every claim, in every forum, forever, and the only asset entrusted to the Administrator's protection. Courts have long recognized that a "without prejudice" dismissal that operates as functionally with prejudice because limitations have run is among the strongest equitable circumstances for relief — and where the dismissal would also extinguish the entirety of an estate's recoverable interest, the case for cure under Rule 17(a)(3) is at its zenith.

## VIII.  PLAINTIFF'S DOCUMENTED PURSUIT OF COUNSEL, THE CONTINUING DEPRIVATION CAUSED BY DEFENDANTS' TORTIOUS INTERSTATE PATIENT DIVESTITURE, AND RENEWED MOTION FOR FACILITATION OF COUNSEL

Plaintiff respectfully notes the asymmetry of the procedural record on the question of representation.

Plaintiff has contacted in excess of one hundred firms across the Eighth and Second Circuits and nationally in an effort to secure counsel — first, to obtain treatment and transfer for Ms. Lee from conditions of false imprisonment, abuse, and ongoing malpractice while she was alive; then, during and after the intentional interstate medical divestiture Defendants engineered under duress from Lincoln, Nebraska, to the Southern District of New York — a transfer undertaken to relocate the situs of her impending death outside Nebraska's jurisdiction in the immediate aftermath of a documented and contemporaneously contested medical battery; and consistently since her death.

Despite graphic, documented hospital-acquired wounds, direct admissions (including intent) in the Defendants' own medical records evidencing a medical battery, and ongoing catastrophic malpractice, no attorney would enter the hospital room while she was alive. That representational deprivation has continued to the present day, exacerbated by Defendants' tortious interstate divestiture: a non-clinical transfer that Defendants themselves funded, executed at the close of a year of total custody during which every other transfer demanded by the patient and her proxies had been categorically denied — until the battery changed the hospital's risk calculus.

21

Defendants intentionally relocated the situs of death across state lines, foreclosing in one stroke Nebraska-based criminal and regulatory intervention and investigation into the underlying battery; access to a Nebraska attorney to interview or meet with Ms. Lee while she was alive; access to a Nebraska physician to examine her in person, provide a second opinion, or supply a contemporaneous Certificate of Merit or Declaration of Malpractice; and any prospect that the case would be taken up by a private bar with the economic incentive to litigate a doctrinally hybrid action of this character.

Defendants now invoke that engineered foreclosure to argue that the Estate's injuries are Nebraska-only and triable only in Nebraska. The impossibility they now invoke is the impossibility they created. The resulting representational and evidentiary vacuum is not a product of the Estate's posture, but of Defendants' own enterprise conduct.

The Estate's pleading reflects the unusual character of the conduct it addresses. The complaint pleads twenty-two causes of action because the operative facts span a years-long custodial confinement during which Defendants refused discharge, transfer, and accommodation, and during which the underlying tortious conduct cut across multiple domains beyond clinical medicine — including fraudulent charting and concealment, deployment of security personnel against a healthcare proxy, restriction of communication, disability discrimination, retaliation, civil conspiracy, and the ultimate non-clinical interstate intentional divestiture that followed the medical battery. As Administrator forced to secure the Estate's rights, Plaintiff had no option but to record and press the full set of operative torts and federal causes of action to preserve them against the statute of limitations and any waiver risk.

The breadth of the pleading is, moreover, a more conservative consolidation than it may at first appear. More than ten distinct documented malpractice events have been consolidated into a single Count I (Medical Malpractice); the remaining twenty-one counts plead doctrinally separate conduct — intentional medical battery, aiding and abetting battery, fraud by commission and omission, breach of fiduciary duty, tortious interference, civil rights violations under 42 U.S.C. § 1983, disability discrimination and retaliation under the ADA and § 504 of the Rehabilitation Act, false imprisonment, civil conspiracy, and related theories — each carrying its own elements, its own limitations period, and its own evidentiary requirements. Any characterization of the operative complaint as malpractice in disguise is therefore wrong on the face and text of the pleading: the malpractice events are pleaded as malpractice, in a count titled and structured as such; the remaining counts are pleaded as something else because they are something else.

Narrowing, focusing, or streamlining the pleading — separating economically optimal claims, refining doctrinally questionable ones, or dismissing those that on reflection may be barred or imperfectly pleaded — is precisely the kind of strategic exercise that licensed counsel would undertake on amendment. Plaintiff has been systematically denied that opportunity. The

complaint's breadth is not pro se misadventure; it is preservation, in the absence of the very representation that would refine it.

Plaintiff faces this litigation against ten Defendants represented by three defense teams of substantial resources and full procedural sophistication, in a doctrinally hybrid posture spanning state intentional torts, fraudulent concealment, federal civil rights claims under § 1983, Title II of the ADA, and § 504 of the Rehabilitation Act, cross-border jurisdictional questions, complex savings-statute and tolling issues, and substantial threshold motion practice that must be sustained before merits litigation can even begin. The asymmetry is structural, not stylistic, and it operates against precisely the kind of plaintiff whom the Federal Rules — and this Court's inherent equitable authority — were designed to protect from forfeiture.

Recognizing that asymmetry, and notwithstanding the doctrinal sufficiency of Plaintiff's pro se posture under Rule 17(a)(1) and *Guest v. Hansen*, Plaintiff respectfully renews the motion at ECF No. 7 for facilitation of counsel under the Court's inherent authority. Plaintiff continues to believe that it is in the best interests of the Estate and in the interests of justice that the Estate be professionally represented in this litigation. Plaintiff respectfully requests that the Court facilitate such representation through whatever mechanism — including referral to the Pro Bono Panel, coordination with the Pro Se Intake Unit, or other inherent-authority mechanism — the Court deems appropriate.

## IX.  REQUESTED RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

- Decline to dismiss the Estate's claims, and find that the threshold representation concern is resolved by the plain text of Federal Rule of Civil Procedure 17(a)(1), by the Surrogate's Court of Orange County's notarized record of waivers of administration, and, in the alternative, by the Second Circuit's *Guest v. Hansen* exception on the strength of the Declaration submitted herewith;
- Renew and grant the motion at ECF No. 7 for facilitation of counsel under the Court's inherent authority, through whatever mechanism — including referral to the Pro Bono Panel, coordination with the Pro Se Intake Unit, or other inherent-authority mechanism — the Court deems appropriate;
- In the alternative, grant Plaintiff a reasonable cure period under Federal Rule of Civil Procedure 17(a)(3) to supplement the record as the Court may direct; and
- To the extent the Court is not persuaded that the Estate's claims may proceed, dismiss those claims without prejudice and expressly preserve Plaintiff's ability to seek any further savings-statute or equitable tolling remedies available under applicable law.

Plaintiff respectfully thanks the Court for its consideration.

Respectfully submitted,

/s/ Matthew F. Leber
Matthew F. Leber
Pro Se
Administrator of the Estate of Beth Ann Lee

**<u>ATTACHMENTS:</u>**

Exhibit A – Declaration of Matthew F. Leber

**<u>EXHIBIT A</u>**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTATE OF BETH ANN LEE, )<br>　　　　Plaintiff, )<br> )<br> -against- )<br> )<br>BRYAN MEDICAL CENTER, et al., )<br> )<br>　　　　Defendants. ) | Case No. 7:26-cv-00559-PMH |

**DECLARATION OF MATTHEW F. LEBER**

I, Matthew F. Leber, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, and pursuant to the requirements enumerated in *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), as follows:

1.　I am the duly appointed Administrator of the Estate of Beth Ann Lee, the Plaintiff in the above-captioned action. I make this declaration on personal knowledge and belief.

2.　Beth Ann Lee died on June 17, 2023. Uncontested Letters of Administration appointing me sole Administrator of her Estate were issued by the Surrogate's Court of Orange County, New York on August 27, 2025.

3.　As a condition of my appointment, Bruce Lee, the decedent's surviving spouse, and Jessica Leber, the decedent's daughter, each notarized irrevocable waivers of administration, which were filed with the Surrogate's Court of Orange County and were required for issuance of these Letters.

4.　After conferring with each, Bruce Lee and Jessica Leber have further agreed to renounce and disclaim any and all claims to the Estate in perpetuity.

5.　The Estate has no known creditors.

6.　The Estate has no assets other than the causes of action pleaded in this action. The Estate is indigent and is dependent on the personal funds of the undersigned Administrator to secure all its rights.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 17, 2026, at Middletown, New York.

/s/ Matthew F. Leber
Matthew F. Leber
Administrator, Estate of Beth Ann Lee